LHE
F# 2023R00527

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF:

- One Police Department USB Key chain
- A Digital Camera Serial Number 8S724284, including a 2 GB SD Memory Card Stored within the Camera
- An Olympus Pearlcorder S713 Cassette Player and Two Cassette Tapes
- One Lenovo Laptop, Serial Number R90ZHRBN
- One Amazon Tablet Model X43Z60, ID # YJM-0725
- Sandisk USB Thumb Drive Serial Number BL190957941W
- One Dell Laptop, Inspiron 3502 Service Tag #HVXLSD3
- One Apple Macbook Serial Number C02WLRY4J1WK
- One Hewlett Packard All in One Desktop Serial Number S/N 8CC2072WQW
- Apple iPhone 14 - IMEI #350577192209198 S/N F7TC96LT6D

CURRENTLY LOCATED AT 271 CADMAN PLAZA EAST, BROOKLYN, NEW YORK

TO BE FILED UNDER SEAL

APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE

Case No.  23-1061-M

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Angela Tassone, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent since 2014 and am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for child exploitation, child pornography, sex trafficking, prostitution and other offenses. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a governme agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. During my tenure with the FBI, I have participated in numerous investigations of individuals engaged in the sexual exploitation of children, during which I have (a) conducted physical surveillance, (b) executed search warrants, including search warrants for electronically stored information and (c) debriefed witnesses and victims. In addition, as a result of my training and experience, I am familiar with the techniques and methods used by individuals involved in criminal activity to conceal their activity from law enforcement.

3.      Among other duties, I am participating in an investigation relating to, among other things, child exploitation and attempted child exploitation, in violation of Title 18, United States Code, Section 2251, coercion and enticement of a minor, in violation of Title 18, United States Code, Section 2422, and receipt of child pornography, in violation of Title 18, United States Code, Section 2252 the ("Subject Offenses") committed by Christopher Terranova.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched are the below devices:

- One Police Department USB Key chain
- A Digital Camera Serial Number 8S724284, including a 2 GB SD Memory Card Stored within the Camera
- An Olympus Pearlcorder S713 Cassette Player and Two Cassette Tapes
- One Lenovo Laptop, Serial Number R90ZHRBN
- One Amazon Tablet Model X43Z60, ID # YJM-0725
- Sandisk USB Thumb Drive Serial Number BL190957941W
- One Dell Laptop, Inspiron 3502 Service Tag #HVXLSD3
- One Apple Macbook Serial Number C02WLRY4J1WK
- One Hewlett Packard All in One Laptop Serial Number S/N 8CC2072WQW
- Apple iPhone 14 - IMEI #350577192209198 S/N F7TC96LT6D

hereinafter the "Devices." The Devices are currently located at 271 Cadman Plaza East, Brooklyn, New York.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. Since approximately September 2023 I have been involved in an investigation relating to Christopher Terranova, a New York City Police Officer. Terranova was first arrested by the New York City Police Department on or about May 23, 2023 on charges of disseminating indecent material to minors and endangering the welfare of a child. Terranova was re-arrested July 18, 2023 on additional charges relating to sexual misconduct and

dissemination of indecent material to minors. Terranova is currently suspended from his employment as a New York City Police Officer while the allegations are investigated. In connection with my work on this investigation, I have reviewed witness interviews as well as copies of communications exchanged between Terranova and a number of underage boys via various forms of electronic communication, including Snapchat and Instagram direct messenger.

8. The investigation has revealed that Terranova solicited at least three underage males for explicit nude photographs, and in one instance, sexually assaulted one of the minor males. For example, on or about March 23, 2023, an underage male ("Underage Male 1") went to the 121st precinct in Staten Island to report being victim of a robbery. At the precinct, he encountered Terranova, whom he had met previously at his parents' store in the neighborhood. According to Underage Male #1, while at the precinct he was told that because the robbery occurred in a different precinct, he needed to submit his police report there. Nevertheless, several days later, Underage Male #1 received a text message from Terranova, inquiring about the status of the investigation. Shortly thereafter, Terranova provided Underage Male #1 with his usernames on Snapchat and Instagram, and they became "friends" on Snapchat.

9. Once Terranova connected with Underage Male #1 on Snapchat, he began asking him sexual questions. For example, Underage Male #1 reported that Terranova asked him questions like "do you jerk off" and "what do you watch" and asked Underage Male #1 to send him clips of what he watches, which Underage Male #1 understood to be a reference to pornography. Underage Male #1 further explained that the messages escalated from there to "do you measure it, " which Underage Male #1 understood to be a reference to his penis, and "are your pubes the same color as your hair."

10. After asking questions along these lines, the messages escalated into Terranova using Snapchat to sent Underage Male #1 a picture of his pubic area, including the base of his penis. Upon sending him this picture, Terranova then told Underage Male #1 "see, it's nothing. Your turn."

11. I have reviewed screenshots taken by Underage Male #1 of messages that Terranova sent to him on Snapchat. Included among those messages is the following exchange:

   a. Terranova: And experimenting and doing discreet things to know inside isn't a bad thing, trust me *Like if you said hey send me your pubes I would be like okay bro fuck it, since we have trust*" and "Like I said I'm here for you and I hope you believe me, I promise you I'm in your corner" and "*Just don't let me down and we continue and have trust about EVERYTHING and ANYTHING*"

   b. Later on in the messages, the following exchange takes place:

   Terranova: "Ofc just through this would after the curiosity part lol  Would have just showed you relaxing pic in undies"
   UM1: Yeah I guess I wasn't understanding correctly  Sorry"
   Terranova: "It's okay  *Thought one underwear pic wouldn't hurt lol,  was feeling the vibe  Put your porn on you'll feel better lol*"
   UM1: "Maybe later I'm not in the mood right now"
   Terranova: "What happened? You were so happy a few min ago"
   UM1: "Yeah but now I'm just tired"
   Terranova: "*Can I show you quick before bed ? Just one  It will be fun and brotherly*"
   UM1: "I guess"
   Terranova: "Then down the road see what happens Yay"

12. In addition to Underage Male #1, Terranova attempted to solicit pornographic photos from other underage males, including Underage Male #2. Underage Male #2 met Terranova through youth football. Terranova connected to Underage Male #2 over Snapchat, and began asking him for sexually explicit photographs, specifically requesting "show

5

me your ass." Further, Underage Male #2 reported that Terranova asked him questions about his "private parts" and then asked him to send him pictures of his "pubes."

13. A third underage male, Underage Male #3, has told law enforcement that he was sexually assaulted by Terranova. Underage Male #3, who identifies as gay, met Terranova through family friends, and they connected over Instagram and Snapchat. As with Underage Males #1-2, Terranova used social media communications to ask Underage Male #3 questions about his sexual behavior and genitals. These communications escalated to an incident in which Terranova offered, using his cell phone, to pick up Underage Male #3 from a party and drive him home. Terranova then picked up Underage Male #3 and drove him to an isolated area where he began to kiss him. Ultimately the encounter escalated to Terranova using his hands to force Underage Male #3 to perform oral sex on him. Subsequent to this incident Terranova continued to message Underage Male #3 over Snapchat and, among other things, request explicit pictures of Underage Male #3.

14. The Devices, other than the Apple iPhone, were recovered in connection with a search of Terranova's residence. Specifically, on May 23, 2023, the Honorable Mario F. Mattei, Judge of the Supreme Court of New York, authorized a warrant allowing the New York City Police Department to search the defendant's home, car, police locker and NYPD-issued iPhone for evidence that tends to demonstrate the commission of the crimes of endangering the welfare of a child and disseminating indecent material to minors. The warrant authorizing the search of Terranova's home is attached hereto as Ex. A, and specifically authorized officers to search the home as well as any lockboxes. The warrant further authorized the seizure of any electronic storage devices, laptops, cell phones, documents or discs. In an abundance of caution

and given that the Devices are now in federal custody, I am seeking a search warrant specifically authorizing the search of the Devices.

15. In connection with the search of Terranova's home, law enforcement located and seized a collection of letters and photographs that Terranova appears to have exchanged with an underage male victim, Victim #4, who has been identified by law enforcement and who resides in Texas. These letters ,which are dated and begin in 2019, at which time Victim #4 would have been approximately 15 years old, include sexually suggestive content, including references to meeting in person and "experimenting," as well as expressions of love.

16. I have conferred with a Detective of the New York City Police Department who was involved in executing the search at Terranova's home. The home is a three-bedroom apartment that TERRANOVA shared with roommates. The Detective informed me that the below items were recovered from Terranova's room in the apartment:

- One Police Department USB Key chain
- A Digital Camera Serial Number 8S724284, including a 2 GB SD Memory Card Stored within the Camera
- An Olympus Pearlcorder S713 Cassette Player and Two Cassette Tapes
- One Lenovo Laptop, Serial Number R90ZHRBN
- One Amazon Tablet Model X43Z60, ID # YJM-0725
- Sandisk USB Thumb Drive Serial Number BL190957941W

Notably, the Sandisk USB Thumb Drive was found in a safe in TERRANOVA's room.

17. The below devices were recovered from the common area of the apartment. These items belong to TERRANOVA's roommates. The roommates advised NYPD at the time of the search that TERRANOVA had access to these devices. Moreover, in regard to

the Hewlett Packard All in One computer, TERRANOVA had his own user profile on the device.

- One Dell Laptop, Inspiron 3502 Service Tag #HVXLSD3
- One Apple Macbook Serial Number C02WLRY4J1WK
- One Hewlett Packard All in One desktop Serial Number S/N 8CC2072WQW

18. The Apple iPhone was obtained from Terranova's person in connection with his arrest by the NYPD. On May 24, 2923, the Honorable Mario F. Mattei of New York Supreme Court signed a search warrant authorizing the search of that iPhone as well as one other iPhone. In an abundance of caution and given that the Devices are now in federal custody, I am seeking a search warrant specifically authorizing the search of the Devices.

19. Because Terranova perpetrated his crimes through the use of social media and messaging services, and because he used those digital communications services to solicit and transmit explicit photographs, I submit that there is probable cause to believe the Devices contain evidence of the Subject Offenses.

20. The Devices are currently in the lawful possession of the FBI. They came into the FBI's possession on or about November 27, 2023, when an agent of the FBI picked up the devices from the NYPD evidence department for the purposes of obtaining the instant warrant.

21. The Devices are currently in storage at 271 Cadman Plaza East, Brooklyn New York. Based on my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

**TECHNICAL TERMS**

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

23. Based on my training, experience, and research, I know that the Devices collectively have capabilities that allow them to serve as digital cameras, wireless telephones, digital storage devices, portable media players and computers. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed

via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25. There is probable cause to believe that things that were once stored on the Devices, particularly the wireless telephones, storage media and personal computers may still be stored there, for at least the following reasons:

 a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

 b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

 c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system

configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file

12

systems can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent

with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Angela Tassone*
Angela Tassone
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on December 1, 2023:

*Cheryl Pollak*
HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

30. The property to be searched are the below devices:

- One Police Department USB Key chain
- A Digital Camera Serial Number 8S724284, including a 2 GB SD Memory Card Stored within the Camera
- An Olympus Pearlcorder S713 Cassette Player and Two Cassette Tapes
- One Lenovo Laptop, Serial Number R90ZHRBN
- One Amazon Tablet Model X43Z60, ID # YJM-0725
- Sandisk USB Thumb Drive Serial Number BL190957941W
- One Dell Laptop, Inspiron 3502 Service Tag #HVXLSD3
- One Apple Macbook Serial Number C02WLRY4J1WK
- One Hewlett Packard All in One Laptop Serial Number S/N 8CC2072WQW
- Apple iPhone 14 - IMEI #350577192209198 S/N F7TC96LT6D

hereinafter the "Devices."  The Devices are currently located at Cadman Plaza East, Brooklyn, New York.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 2251 (exploitation of children), 18 U.S.C. § 2422 (coercion and enticement of a minor) and 18 U.S.C. § 2252 (receipt of child pornography) (the "Subject Offenses") and involve Christopher Terranova since June 1, 2018 including:

   a. Communications (including text, data, chat, MMS, SMS, email messages, social media messages or any other communications), including any attachments to communications and any associated information such as phone number or User ID with any of the underage victims identified to date (i.e. Underage Males #1-4);

   b. Communications (including text, data, chat, MMS, SMS, email messages, social media messages or any other communications), including any attachments to communications and any associated information such as phone number or User ID pertaining to the Subject Offenses;

   c. All files including text, photos or videos stored on the Devices constituting evidence of the Subject Offenses;

   d. Any internet or browser entries or history relating to the Subject Offenses; and

   e. Evidence of computer forensic programs and associated data that are designed to eliminate data from computer devices, storage media and related electronic equipment.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

P R E S E N T: HONORABLE Hon. Mario F. Mattei ISSUING JUDGE

SEARCH WARRANT

TO ANY POLICE OFFICER OF THE NEW YORK CITY POLICE DEPARTMENT:

1. YOU ARE HEREBY AUTHORIZED and DIRECTED to search, seize, and photograph:

**40 Figurea Avenue, Staten Island, New York 10312, which is accessed through front door, and which consists of the first and second floor and curtilage**

2. YOU ARE HEREBY AUTHORIZED and DIRECTED to search for, seize, and photograph the following property:

**Evidence that tends to demonstrate the participation and commission of the crimes of Penal Law §§ 260.10, Endangering the Welfare of a Child and 235.22, Disseminating Indecent Material to Minors in the First Degree, and attempts and conspiracy to commit said crimes, including laptops, cellphones, photographs, lockboxes, external hard drives, tablets, gaming devices, or other electronic devices by which digital data can be stored as well as any documents or data, including but not limited to concerning email accounts, instant message accounts, and internet access accounts, regarding the possession, acquisition, storage, or transmission of images of adults or children engaged in sexually explicit conduct;**

3. THIS warrant must be executed not more than ten (10) days from the date of its issuance and any property seized pursuant hereto shall be returned and delivered to the Court without unnecessary delay.

4. THIS warrant may be executed any time day or night.

5. THE New York City Police Department is permitted to process the target location. A photographer from the Richmond County District Attorney's Office and/or from the New York City Police Department are permitted to photograph and videotape the scene within the permissible scope of this warrant.

Dated:   Staten Island, New York
         May 23, 2023

TIME:    12: 22 P.M

JUDGE
JUDGE OF THE SUPREME COURT
CITY OF NEW YORK
STATE
Hon. Mario F. Mattei